January 16, 2018

**Supreme Court**

No. 2016-301-Appeal.
(WC 15-218)

The Gerald P. Zarrella Trust et al.  :

v.  :

Town of Exeter et al.  :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

The Gerald P. Zarrella Trust et al.          :

v.                              :

Town of Exeter et al.              :

Present:  Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.**  This appeal involves a man, Gerald Zarrella, his land, Gerald's Farm, and a local government, the Town of Exeter, Rhode Island.  The plaintiffs, the Gerald P. Zarrella Trust, Gerald P. Zarrella, in his capacity as trustee, and Gerald's Farm, LLC (collectively, Zarrella), seek review of a Superior Court judgment denying their request for declaratory relief.  This matter came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  After considering the parties' written and oral arguments, and after reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  At issue is whether subsection 4(a) of Rhode Island's Right to Farm Act, G.L. 1956 chapter 23 of title 2, permits Zarrella to host commercial events, such as weddings for a fee, on his farmland in Exeter.  For the reasons discussed below, we hold that it does not; therefore, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

This is not the first time that Zarrella and the Town of Exeter have been entangled in litigation over Zarrella's right to host commercial events on his farmland. In 2011, after the town sued Zarrella to prevent him from doing exactly that, the town and Zarrella entered into an amended consent judgment that permanently enjoined Zarrella from "using and/or renting the property located at 270 Narrow Lane, Exeter, Rhode Island, known as Gerald's Farm * * * for weddings for a fee or other commercial events."[1] There was one caveat: the injunction would run with Zarrella's land "until such time as and to the extent that the terms of this permanent injunction are superseded by statute * * *." According to Zarrella, that time came in 2014.

In 2014, the General Assembly amended the second sentence of § 2-23-4(a) to read as follows:

> "The mixed-use of farms and farmlands for other forms of enterprise including, but not limited to, the display of antique vehicles and equipment, retail sales, tours, classes, petting, feeding and viewing of animals, hay rides, crop mazes, festivals and other special events are hereby recognized as a valuable and viable means of contributing to the preservation of agriculture."[2]

Concluding that this amendment superseded the 2011 injunction, Zarrella attempted to obtain a zoning certificate from the town that would allow him to host a commercial fundraising event on his farmland. But, as it did in 2011, the town rebuffed Zarrella's attempt to do so, informing him

---

[1] At oral argument, Zarrella's counsel agreed that hosting weddings for a fee is barred by Exeter's zoning ordinance. As § 2.3.2 of the Exeter zoning ordinance provides, "[a]ny use not listed is specifically prohibited." Exeter's zoning table does not list the hosting of weddings for a fee as a permissible use of Zarrella's farmland.

[2] Prior to 2014, the second sentence of G.L. 1956 § 2-23-4(a) provided only that "[t]he mixed-use of farms and farmlands for other forms of enterprise is hereby recognized as a valuable and viable means of contributing to the preservation of agriculture."

that he was still bound by the terms of the 2011 injunction. This prompted Zarrella to file suit against the town and the members of the Town Council, in their official capacities, in 2015.

In a verified complaint, Zarrella sought a number of declarations pursuant to the Uniform Declaratory Judgments Act, G.L. 1956 chapter 30 of title 9. Zarrella asserted that hosting commercial events—including hosting weddings for a fee—is the sort of "other special event[]" that the General Assembly "recognized * * * as a valuable and viable means of contributing to the preservation of agriculture" when it amended § 2-23-4(a) in 2014. The thrust of Zarrella's complaint was that the 2014 amendment to § 2-23-4(a) rendered the 2011 permanent injunction a nullity, green-lighting his ability to host weddings for a fee on his farmland.

After he filed his lawsuit, Zarrella obtained a temporary restraining order that vacated the 2011 injunction.[3] But that temporary order was short-lived. After a nonjury trial,[4] a second trial justice denied Zarrella's request for declaratory relief, ruling that the General Assembly's 2014 amendment to § 2-23-4(a) did not supersede the 2011 injunction. In his decision, the trial justice concluded that the second sentence of § 2-23-4(a) merely set forth a list of encouraged uses of farms and farmland, which did not preempt the town's authority to restrict nonagricultural operations such as hosting commercial events, including weddings for a fee. It is from the judgment embodying that decision that Zarrella appeals.

---

[3] In granting Zarrella's temporary restraining order, the hearing justice ordered that the 2011 injunction was "superseded by the amendments to § 2-23-4 * * *, known as the 'Right to Farm Act,' and accordingly the Town of Exeter [could not] prohibit weddings or other commercial events at the subject property located at 270 Narrow Lane, Exeter, Rhode Island."

[4] It appears from the record that, in lieu of a fact-finding hearing, the parties submitted proposed statements of undisputed facts for the trial justice to consider in rendering his decision.

## II

## Standard of Review

"It is well settled that, 'with respect to the ultimate decision by a trial justice to grant or deny declaratory relief, our standard of review is deferential.'" *Bruce Brayman Builders, Inc. v. Lamphere*, 109 A.3d 395, 397 (R.I. 2015) (quoting *Grady v. Narragansett Electric Co.*, 962 A.2d 34, 41 (R.I. 2009)). Generally, "this Court reviews a decision by a trial justice in a declaratory judgment action in order 'to determine whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceeded its authority.'" *Cigarrilha v. City of Providence*, 64 A.3d 1208, 1212 (R.I. 2013) (quoting *Town of Richmond v. Rhode Island Department of Environmental Management*, 941 A.2d 151, 155 (R.I. 2008)). Moreover, "this Court affords the '[f]actual findings of a trial justice in a nonjury case * * * great weight and will not * * * disturb[] [them] on appeal unless they are clearly wrong or unless the trial justice has overlooked or misconceived material evidence.'" *Id.* (quoting *Cullen v. Tarini*, 15 A.3d 968, 977 (R.I. 2011)).

Here, however, because we are presented with a question of statutory interpretation, that deferential standard of review gives way to a *de novo* standard of review. *Town of North Kingstown v. Albert*, 767 A.2d 659, 662 (R.I. 2001) (explaining that "questions implicating statutory interpretation are questions of law and are therefore, reviewed *de novo* by this Court"). When confronted with a clear and unambiguous statute, our task is straightforward: "[W]e are bound to ascribe the plain and ordinary meaning of the words of the statute and our inquiry is at an end." *Town of Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1039 (R.I. 2017) (quoting *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1078 (R.I. 2013)).

# III

## Discussion

What this case centers on is whether, by enacting the 2014 amendment to § 2-23-4(a), the General Assembly expanded the definition of "agricultural operations" to include the hosting of commercial events, such as weddings for a fee. Zarrella argues that it clearly and unambiguously did; the town argues with equal vigor that it clearly and unambiguously did not. As a threshold matter, we agree with the parties that § 2-23-4(a) is clear and unambiguous. Thus, "we are bound to ascribe the plain and ordinary meaning of the words of the statute and our inquiry is at an end." *Town of Warren*, 159 A.3d at 1039 (quoting *Bucci*, 68 A.3d at 1078).

In full, § 2-23-4(a) provides:

> "As used in this chapter, 'agricultural operations' includes any commercial enterprise that has as its primary purpose horticulture, viticulture, viniculture, floriculture, forestry, stabling of horses, dairy farming, or aquaculture, or the raising of livestock, including for the production of fiber, furbearing animals, poultry, or bees, and all such other operations, uses, and activities as the director, in consultation with the chief of division of agriculture, may determine to be agriculture, or an agricultural activity, use or operation. *The mixed-use of farms and farmlands for other forms of enterprise including, but not limited to, the display of antique vehicles and equipment, retail sales, tours, classes, petting, feeding and viewing of animals, hay rides, crop mazes, festivals and other special events are hereby recognized as a valuable and viable means of contributing to the preservation of agriculture*."
> (Emphasis added.)

There is no dispute that the hosting of a wedding for a fee is a commercial activity that does not fall under the enterprises set forth in the first sentence of § 2-23-4(a). Therefore, the question before us is whether hosting a wedding for a fee is an "agricultural operation" by virtue of the language contained in the second sentence of § 2-23-4(a).

Because he reads that sentence as part of the definition of "agricultural operations" contained in the first sentence, Zarrella contends that the hosting of weddings for a fee is a mixed-use that serves "as a valuable and viable means of contributing to the preservation of agriculture." Zarrella argues that, although the second sentence is separate from the first, it is still included in the definitional section of the statute. And, he reasons, by including the "mixed-use" language in the definitional section of the Right to Farm Act, the General Assembly meant to include those mixed-uses within the ambit of the definition of "agricultural operations." To support his argument on that point, Zarrella relies on the rule against surplusage, a canon of statutory construction that provides:

> "In giving construction to a statute, the court is bound, if it be possible, to give effect to all its several parts. No sentence, clause or word should be construed as unmeaning and surplusage, if a construction can be legitimately found which will give force to and preserve all the words of the statute." *St. Clare Home v. Donnelly*, 117 R.I. 464, 470, 368 A.2d 1214, 1217-18 (1977).

In sum, Zarrella's argument is that the 2014 amendment to § 2-23-4(a) expanded the definition of "agricultural operations," freeing him from the constraints of the 2011 injunction and allowing him to host weddings on his farmland.

The town, on the other hand, interprets the second sentence of § 2-23-4(a) not as an expansion of the definition of "agricultural operations," but as a statement of policy. According to the town, in the first sentence, the General Assembly set forth the definition of "agricultural operations"—a definition that the parties agree does not include the type of commercial endeavor in which Zarrella wishes to engage. In the second sentence, the town argues, the General Assembly then provided a statement of policy, including a list of activities that contribute to the preservation of agriculture. The town argues that that language, amended in 2014, does not expand the definition of "agricultural operations." According to the town's interpretation of the

- 6 -

statute, § 2-23-4(a) does not supersede the 2011 injunction, and Zarrella remains prohibited from using his land as a wedding venue.

After careful consideration of this issue, we agree with the town. It is our view that the second sentence of § 2-23-4(a) provides only a clear and unambiguous list of mixed-uses that the General Assembly has "recognized as a valuable and viable means of contributing to the preservation of agriculture." That list does not include weddings, but it is our opinion that, even if the activity of hosting weddings for a fee fell within the ambit of § 2-23-4(a)'s second sentence, that sentence would not and could not expand the definition of "agricultural operations." The two sentences in § 2-23-4(a) serve two distinct purposes: the first is definitional, the second is aspirational. The second sentence is not devoid of meaning; it sets forth a list of encouraged activities that the General Assembly has deemed "valuable and viable" with respect to "contributing to the preservation of agriculture." However, that statement of policy preference does not, merely by its location in the statutory framework, transform a nonagricultural mixed-use of farmland into an "agricultural operation" as defined by § 2-23-4(a).

Moreover, an examination of § 2-23-4 in its entirety reveals that the statute breaks down "operations" into two categories: "agricultural operations," as defined in the first sentence of subsection (a); and, "nonagricultural operations," as referred to in subsection (b). Under § 2-23-4(b), those activities that are "nonagricultural" are subject to local control.[5] Because hosting weddings for a fee is an activity that falls outside the statutory definition of "agricultural operations," it is a "nonagricultural" activity that is subject to the town's control.

---

[5] Section 2-23-4(b) provides that:

- 7 -

**IV**

**Conclusion**

We hold that the second sentence of § 2-23-4(a) is a statement of policy, not an expansion of the definition of "agricultural operations." Based on the clear and unambiguous language of § 2-23-4(a), the plaintiffs remain bound by the 2011 injunction that enjoins them from using the farmland "for weddings for a fee or other commercial events." The amendment to § 2-23-4(a) offers the plaintiffs no refuge from that injunction. For those reasons, we affirm the judgment of the Superior Court. The record shall be remanded to that court.

Justice Goldberg did not participate.

---

"Nothing herein shall be deemed to restrict, limit, or prohibit nonagricultural operations from being undertaken on a farm except as otherwise restricted, regulated, limited, or prohibited by law, regulation, or ordinance or to affect the rights of persons to engage in other lawful nonagricultural enterprises on farms; provided, however, that the protections and rights established by this chapter shall not apply to such nonagricultural activities, uses or operations."

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | The Gerald P. Zarrella Trust et al. v. Town of Exeter et al. |
| **Case Number** | No. 2016-301-Appeal.<br>(WC 15-218) |
| **Date Opinion Filed** | January 16, 2018 |
| **Justices** | Suttell, C.J., Flaherty, Robinson, and Indeglia, J.J. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Luis M. Matos |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>William J. Conley, Esq.<br>Gina Renzulli Lemay, Esq.<br><br>For Defendants:<br><br>James P. Marusak, Esq.<br>Per C. Vaage, Esq.<br>Stephen Joshua Sypole, Esq. |